IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| GREGORY DAVID HOWE,<br><br>Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br>Commissioner of Social Security,<br><br>Defendant. | 4:16-CV-00164<br><br><br><br><br>REPORT AND RECOMMENDATION |

Plaintiff Gregory Howe moves for reversal of Defendant Social Security Commissioner's decision denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434 (2015), or alternatively, for remand to appropriately weigh the evidence on the record. The Commissioner moves that the Court affirm the denial of benefits. This Court reviews the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

Howe complains that the Administrative Law Judge's ("ALJ") decision is not supported by substantial evidence because the ALJ's determination of Howe's residual functional capacity did not take into account the effect of the combination of his severe mental impairments, along with his borderline IQ score of 71, which is one point from qualifying Howe for Listing 12.05(C) or 12.05(D). Howe disagrees with the ALJ's decision to discount the credibility of testimony given by him and his mother. Howe also disagrees with the ALJ's assessment that he has worked steadily in the past. Howe asserts that the hypothetical the ALJ used in questioning the vocational expert ("VE") was inaccurate and incomplete in describing Howe's limitations, such that the ALJ's opinion was not supported by substantial evidence in the record as a whole, particularly in light of additional testimony elicited from the VE in response to questions from the ALJ and Howe's attorney.

## I. PROCEDURAL HISTORY

Howe filed a Title II application for DIB on March 25, 2013, alleging a disability onset date of January 1, 2013, due to numerous mental and physical impairments which render him

1

disabled, including bipolar disorder, major depressive disorder with psychosis, schizoaffective disorder, mild mental retardation/intellectual disability, anxiety, obsessive compulsive disorder, degenerative disc disease, scoliosis, diabetes, diverticulitis/gastroenteritis, and alcohol/substance abuse (Tr. 75, 363–64, 376, 384–86, 394–96, 398-400, 405–09, 411, 419–34, 439–42).

Howe timely requested and received a hearing before Administrative Law Judge Matthew Allen on January 7, 2015 (Tr. 149, 163). The ALJ found that Howe is capable of returning to past relevant work and was not disabled at any time between January 1, 2013, the alleged onset date, and February 2, 2015, the date of the ALJ's unfavorable decision (Tr. 23).

On March 15, 2016, the Commissioner's decision became final when the Appeals Council denied Howe's request for review of the ALJ's decision (Tr. 1). Howe filed a timely Complaint in this case to appeal the denial of benefits (ECF 1). On March 27, 2017, this case was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (ECF 9).

## II. FACTS AND ALJ DECISION

In order to qualify for benefits under the Act, Howe must have been disabled. Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

The ALJ used a five-step sequential evaluation to determine that Howe was not disabled within the meaning of the Act.[1] On February 2, 2015, the ALJ issued a decision denying Howe's

---

[1] 20 C.F.R. § 404.1520(a)(4) (2012) provides:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of [subpart P of part 404 of this chapter] and meets the duration requirement, we will find that you are disabled. . . .

2

claim for DIB under Title II of the SSA. Adhering to the requisite five-step evaluation, the ALJ made the following findings:

- The claimant has not engaged in substantial gainful activity since January 1, 2013, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq.*).

- The claimant has the following severe impairments: Mental Impairments, Variously Diagnosed (e.g., his mental impairments have been labeled as Major Depressive Disorder with psychosis, Bipolar Disorder, Schizoaffective Disorder, Mild Mental Retardation/Intellectual Disability) (20 C.F.R. §§ 404.1520(c), 416.920(c)).

- The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).

- [T]he claimant has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can only occasionally interact with the supervisors, and coworkers. He should have only incidental interaction with the public. Further, the claimant can only perform simple work-related decisions, and simple instructions/tasks, but should not be required to carry out detailed or complex instructions/tasks.

- The claimant is capable of performing past relevant work as an Assembler, Production and a Machine Operator II. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. §§ 404.1565, 416.965).

- The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2013, through the date of this decision (20 C.F.R. §§ 404.1520(f), 416.920(f)).

(Tr. 15–23)

---

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

The ALJ found that Howe had the severe impairments of major depressive disorder with psychosis, bipolar disorder, schizoaffective disorder, and mild mental retardation (Tr. 15). The ALJ found that Howe's degenerative disc disease, scoliosis, diabetes, and gastroenteritis issues were not severe because they either did not result in more than minimal limitations in basic work activities or lacked evidence in the record (Tr. 16, 75). The ALJ found that Howe's alcohol/substance abuse issues did not occur during the pertinent period following January 1, 2013 (Tr. 16). Howe was taking Effexor, Lexapro, and lithium for his mental impairments (Tr. 54). Howe's symptoms are worse when he does not take his medications and when he uses crystal meth (Tr. 407, 411, 416). Howe's attorney confirmed that Howe's physical condition "is not what keeps him out of the workplace," and this remains uncontested in Plaintiff's brief (Tr. 15, 34; *see also* Pl. Br. (ECF 9)).

In October 2011, Howe was treated by James McConville, M.D., at the Mercy Medical Clinic in Centerville, Iowa, for gastroenteritis (Tr. 364). Howe had a follow up visit with Dr. McConville in April 2012 (Tr. 363). Dr. McConville prescribed lithium in order to control Howe's trouble with mood swings associated with bipolar disorder, depression, and obsessive compulsive disorder. He noted that Howe had been fired from Iowa Steel.

In June 2013, Dr. Richard Martin, Ph.D, completed a consultative psychological evaluation of Howe, which included a mental status examination (Tr. 373). Howe reported that lithium leveled out his moods (Tr. 375). Dr. Martin identified Howe's heavy caffeine use as a likely source of some of Howe's anxiety. Dr. Martin stated that Howe had limited intelligence, but was capable of understanding basic instructions and procedures. (Tr. 20, 375). Dr. Martin stated that although Howe had adequate attention and concentration, he would struggle with vocational tasks, other than very basic ones. Dr. Martin also stated that Howe would have difficulties in his relationships with supervisors, coworkers, and the public (Tr. 376).

In July 2013, David Frazer, M.D., performed a consultative examination of Howe and diagnosed him with bipolar disorder and anxiety (Tr. 386). He noted that Howe "would be most successful in a solitary situation with little interaction with others." Dr. Frazer noted that Howe had no lifting or carrying limits; was able to climb, walk, get down on hands and knees to work; was not bothered by extremes of hot or cold; and was not bothered by dust or fumes.

In July 2013, Dr. Dennis Weis, M.D., performed a consultative examination of Howe (Tr. 75). Dr. Weis determined that although Howe had moderate disc degeneration at L4/L5 and

4

L5/S1, he had never sought treatment or taken medication for it. Dr. Weis stated that Howe did not have scoliosis, nor did he have any severe, medically-determinable physical impairment. Dr. Weis stated that Howe would have moderate limitations in his ability to maintain pace, attention and concentration for extended periods, but that his abilities were within a normal range. Dr. Weis stated that Howe would be moderately limited in his ability to understand, remember, and carry out detailed instructions and he should thus be limited to very basic tasks. Dr. Weis stated that Howe would be moderately limited in his ability to interact appropriately with the general public, accept instructions and criticism from supervisors, or get along with coworkers.

In January 2014, Howe was referred for hospitalization by Dr. Linda Bisnauth, M.D., for ten days for the duration of a methamphetamine-induced psychotic episode (Tr. 405). He had not been taking his medications and was complaining of "thoughts that are not really his thoughts"—auditory, tactile, and visual hallucinations including voices telling him to kill, bursts of static, feelings of bugs biting and stinging him, spider webs on his face, "orbs" of colored light, and writing on the walls (Tr. 407). During his hospital stay, he was stabilized and administered his regular medication regimen (Tr. 411–12). He was treated by three different medical professionals. Dr. Michael J. Slattery, M.D., diagnosed him with major depressive disorder with psychosis. David M. Getner, MSN, ARNP-BC, diagnosed and treated Howe for schizoaffective disorder and bipolar disorder (Tr. 409). Marilyn Paplow, ARNP, prescribed Seroquel, lithium, and lorazepam upon Howe's discharge from the hospital (Tr. 412).

From January 2014 until November 2014, Howe was treated on a recurring basis by Dr. Bisnauth and Dr. Janet Fischer, M.D., at River Hills Community Health Center (Tr. 415–36). Howe and his mother consistently reported that he had been doing much better and that the medications he had been prescribed were effective in stabilizing his mood and promoting behavioral control without negative side effects. Howe experienced a period of increased depression following the death of his grandfather in August 2014 (Tr. 432). Howe reported that his hallucinations were still present, but they did not cause him distress, and he did not report auditory hallucinations of voices telling him to kill or intrusive thoughts, only "static shocks" (Tr. 420, 423). Howe needed help remembering his medications and was irritable, but not aggressive or violent (Tr. 427–28). Dr. Bisnauth noted that Howe's insight, judgment, and impulse control were all fair and improving (Tr. 431). Howe's mother stated that the anger and

agitation Howe exhibited in the past had improved significantly when Howe began taking lithium (Tr. 432).

In December 2014, Howe received a consultative psychological evaluation from Dr. Randal Reynolds, Ph.D. (Tr. 442). Dr. Reynolds assessed Howe with a Full Scale IQ of 71, and noted that from a review of the background information, Howe had developmental delays, mild mental retardation, and a mood disorder. Dr. Reynolds did not assess any specific functional limitations associated with these diagnoses.

Howe was born February 17, 1984 and was 30 years old at the time of the hearing in 2015 (Tr. 33). His employment as a dishwasher ended when he quit in 2013 due to incompatibilities with coworkers (Tr. 36). His employment prior to that as an assembler was terminated in 2011 (Tr. 37). He did not receive unemployment benefits (Tr. 36). He completed special education through the 12th grade at an alternative high school and received a diploma in 2002 (Tr. 38, 260). His class rank was 115th out of a class of 130 (Tr. 348). His past work experience includes jobs as a dietary aide, dishwasher, laborer, and line worker; he has worked as an assembler in production and as a Machine Operator II (Tr. 64, 260).

Prior to his alleged disability onset date, Howe worked in a factory doing wire assembly from 2008 until 2011, a job where he was supervised by his uncle (Tr. 37, 373). He was fired from this job in late 2011 for using his cellphone at work (Tr. 37, 242, 364; *see also* Tr. 363). Howe posted substantial gainful activity ("SGA") level earnings from 2007 through 2011 while working at Cargill Meat Solutions and Iowa Steel and Wire Company (Tr. 233). His peak annual earnings were $30,040.18 in 2011 (Tr. 236). He worked as a dishwasher and laborer in 2012, though not at SGA levels (Tr. 236). Howe claims he has been unable to work since January 1, 2013.

In his 2013 Function Report, and at his January 7, 2015, hearing before the ALJ, Howe explained that he performs self-care and hygiene; prepares meals daily; cleans the house; shops for clothes when he needs them; watches television; and plays video games (Tr. 283–86). He testified that he has trouble talking to people (Tr. 282). Howe stated that he has bad eyes, poor memory, difficulty concentrating, and scoliosis (Tr. 287). He stated that he has trouble understanding and following instructions and getting along with people; he thinks people are making fun of him and talking about him.

6

Howe's mother filed a Third-Party Function Report in April 2013 and again in September 2013 (Tr. 290, 306). She noted that he lives with her, so she sees him daily, and reminds him to take his medication each day (Tr. 291–92, 307–08). She was employed as a licensed nurse in a mental health group home (Tr. 57). Howe's mother stated that he has a hard time understanding verbal and written instructions, talking to people, multitasking, and that he gets frustrated easily (Tr. 290, 306). She stated that Howe has panic attacks and obsessive compulsive disorder; she noted that he starts to stutter the more anxious he gets (Tr. 290). He has two children that she cares for when they are at her house (Tr. 291, 307). She stated that she does the cooking, although Howe will heat soups, fix cereal, or microwave meals (Tr. 291–92, 308). She stated that he does some housework such as sweeping the floors, running the dishwasher, using the washer and dryer, and putting his clothes away (Tr. 292, 308). She noted that Howe only left the house to see his grandfather or occasionally go to town with her (Tr. 301).

### III.   STANDARD OF REVIEW

The Court will uphold an ALJ's decision if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but is enough that "a reasonable mind would find [it] adequate to support the Commissioner's conclusion." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015) (quoting *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971) (reasoning that substantial evidence means "more than a mere scintilla"). The Court considers evidence that both supports and detracts from the ALJ's decision. *Moore v. Astrue*, 623 F.3d 599, 605 (8th Cir. 2010). If substantial evidence supports the ALJ's decision, the Court will not reverse merely because substantial evidence exists in the record that would support a contrary outcome, or because the Court would have determined the case differently. *Myers v. Colvin*, 721 F.3d 521, 524 (8th Cir. 2013) (citing *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007)). The ALJ's decision must have been outside the available "zone of choice" for it to warrant reversal. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (citing *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). That a reviewing court may have reached a different decision is not grounds for reversal so long as substantial evidence supports the ALJ's decision. *Id.*

The Court also reviews the Commissioner's decision to determine if there was a procedural error, an erroneous legal standard, or an incorrect application of the law. *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011). Issues of law are reviewed *de novo*, with deference

accorded to the Commission's construction of the Social Security Act. *Petersen v. Astrue*, 633 F.3d 633, 636 (8th Cir. 2011) (citing *Smith v. Sullivan*, 982 F.2d 308, 311 (8th Cir. 1992)).

To establish entitlement to benefits, a claimant must show he is unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted, or can be expected to last, for a continuous period of at least 12 months. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A). The claimant bears the burden of persuasion in proving RFC. *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (citing *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010)).

## IV. DISCUSSION

In this case, the ALJ's decision followed the five-step sequential evaluation set forth in the Social Security regulations. *See* 20 C.F.R. §§ 404.1520, 416.920. The parties do not dispute any of the findings in the first three steps of the analysis. At Step Four, the ALJ found that Howe was not disabled because he is capable of returning to past relevant work. Howe challenges this finding, and asserts it was based on an inaccurate and incomplete hypothetical question describing his limitations. Howe disagrees with the ALJ's finding that testimony from him and his mother was not credible. Howe asserts that the ALJ's findings regarding his work history and activities of daily living were overstatements of the record, and that the ALJ understated his mental health treatment, hospitalizations, and difficulties in finding medication that worked. Howe asserts that the ALJ's decision is not supported by medical evidence, and that the RFC and hypothetical did not address the numerous severe limitations Howe has, such as inability to work at a competitive pace, a deficit in working memory, the need for repeated instructions, and symptoms of his psychological disorders that cause him to have angry outbursts or inappropriate interactions with others at work. Howe requests that the case be reversed and remanded with instructions to award benefits, or at a minimum, be remanded for further findings.

### A. The ALJ's Finding That Howe Was Not A Credible Witness Was Supported By Substantial Evidence

When determining the credibility of a claimant's testimony, the ALJ evaluates whether the claimant's testimony regarding the way he subjectively experiences his impairment is consistent with objective medical evidence and record evidence of his prior work history, daily activities, the effectiveness of medication and treatment sought, factors that precipitate and aggravate symptoms, and the frequency and duration of symptoms. *Aguiniga v. Colvin*, 833 F.3d 896, 902 (8th Cir. 2016) (citing 20 C.F.R. §§ 404.1528, 404.1529, 404.1545(e); *Polaski v.*

*Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)); *see also Perks v. Astrue*, 687 F.3d 1086, 1092–93 (8th Cir. 2012) (citing *Polaski*, 739 F.2d at 1322). The ALJ can discount the claimant's credibility if his testimony is inconsistent with the record as a whole. *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016). The Court will defer to the ALJ's credibility determinations if the ALJ presents good reasons for doing so. *Id.* at 730.

      In this case, Howe claimed that the ALJ was "cherry picking" from the record when he found that Howe had worked at SGA levels in the past. Howe asserts that the ALJ improperly relied upon Dr. Bisnauth's 2014 reports that Howe's condition and functioning were good and improving as a result of treatment and medication. The ALJ found no objective medical evidence of persistent negative affect or outbursts of anger outside of isolated incidents related to drug use and personal tragedy. The ALJ found that the medical evidence on record showed that following a regimen of Seroquel and lithium steadied Howe's affect and behavior. The ALJ noted that Howe's treating physicians adopted a conservative treatment approach; Howe never received long-term intensive treatment. Howe's mental health hospitalizations for rage occurred in 2005, long before his reported disability onset date, and in 2014, following methamphetamine-induced psychosis. Howe's symptoms returned to his everyday baseline following a short period of inpatient treatment and staying on a medication regimen. Howe completes daily activities in the areas of personal care, meal preparation, and housework, but requires assistance managing his finances, medications, and shopping decisions. This evidence supports the ALJ's finding that Howe could perform simple tasks and carry out simple instructions, but not complicated tasks or complex instructions.

      Howe disagrees with the ALJ's assessment that he has worked steadily in the past. Howe notes that while he has occasionally reached SGA earning levels, all but one of his past jobs lasted only a short period of time. Howe testified that he quit or was fired when his psychological disorders and their symptoms—and therefore his interpersonal relationships with coworkers— worsened. Howe was fired from his SGA-level job at Iowa Steel and Wire Company, a job which he had held from 2008–2011, for using his cell phone. Howe testified he would still be working at this job to this day if he had not been fired. His dismissal was unrelated to his impairments or any interpersonal conflict with coworkers or supervisors. Howe's contention that he maintained this job only because he was under his uncle's supervision was entitled to little weight, as there was no evidence that this supervisory role was any different from that of other

9

supervisors at Iowa Steel, and no evidence suggesting that Howe's uncle acted at the level of "job coach" by providing one-on-one counseling or guidance in job-related tasks. Based upon the testimony that the ALJ found to be credible, there was substantial evidence to support the ALJ's finding regarding Howe's work history and capability to return to his past relevant work.

Howe argues that it is the combination of his severe impairments—psychosis, bipolar disorder, schizoaffective disorder, and mild mental retardation/intellectual disability—that render him unable to work. He alleges that the symptoms from these disorders cause him to miss work, or to have angry outbursts or inappropriate interactions with others at work. This connection is unsupported by evidence in the record. Howe contends that he quit his job washing dishes in a restaurant because his coworkers "made it hard for [him] to work there," but he did not present any evidence as to how this was related to his impairments. The plaintiff bears the burden of persuasion for his claims relating to RFC. *Martise*, 641 F.3d at 923. Howe failed to meet this burden.

Each of Howe's complaints regarding the ALJ's assessment of his credibility are unsupported by the record. The ALJ's credibility determination was supported by substantial evidence.

### B. The ALJ's Finding That Howe's Mother Was Not A Credible Witness Was Supported By Substantial Evidence

The same evidence that an ALJ uses to determine that a claimant's testimony was not credible can be used to determine that a third party witness's testimony is cumulative or not credible—that is, its inconsistency with objective medical evidence and record evidence of the claims. *Buckner*, 646 F.3d at 560 (citing *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992)); *see also Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998) ("The ALJ... was equally empowered to reject the cumulative testimony of [claimant's] parents"). When assessing credibility, the ALJ considers the relationship between the claimant and the third-party witness, and whether the witness is a disinterested third party. If the witness is a family member or otherwise interested third party, the ALJ can consider how the relationship might color the testimony. *Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006) (citing *Rautio v. Bowen*, 862 F.2d 176, 180 (8th Cir. 1988)); *see also Wheeler v. Apfel*, 224 F.3d 891, 896 (8th Cir. 2000) ("corroborating testimony of [claimant's] husband was not fully credible").

Howe contends that the ALJ erred in discounting the credibility of Howe's mother's testimony because the ALJ's stated reasoning "merely regurgitates the boilerplate language concerning third party testimony of a relative." This contention misrepresents the substantial evidence upon which the ALJ based his finding. Howe's mother is not a disinterested third party. She allows her son to live with her, supports him financially and emotionally, helps care for his children, and helps with Howe's medication, appointments, and transportation. She does have training as a nurse, and works in the mental health field. This experience might provide her with an understanding of some of Howe's mental impairments, although her background and training were not developed in the record. The ALJ reasonably found that Howe's mother was not acting in a professional capacity as Howe's caregiver. The ALJ found that she was not able "to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms" (Tr. 22). The ALJ was warranted in discounting her opinions about Howe's impairments, or his capacity to work in his former job or other employment.

The same evidence that contradicts Howe's testimony about the efficacy of his medication regimen also diminishes the credibility of his mother's testimony. The evidence in the record supports a finding that at least some of Howe's mental impairments and behaviors are well managed by medication as noted by both Howe's mother and treating physician Dr. Bisnauth (*See* Tr. 422, 425, 427–28, 430–32). The Court finds that the ALJ was justified in discounting Howe's mother's testimony relating to the impact of all of his symptoms related to his impairments.

### C. Howe's Full-Scale IQ Score Of 71 Precludes Him From Presumptive Disability Under Listing 12.05

Howe contends that he is entitled to benefits because the ALJ did not assign proper weight to his full scale IQ score of 71, which is one point above the limit of 70 described in Listing 12.05(C) and 12.05(D).[2] Howe asserts that his full scale IQ score could be as low as 66,

---

[2] The Listing of Impairments was revised in 2017. At the time of the hearing and the ALJ's opinion, the 2015 revision was in effect. The sections relevant to this case, 12.05(C) and 12.05(D), are now described in 20 C.F.R. § 404 Subpart P, Appendix 1, § 12.05(B). Notably, this revised section, 12.05(B)(1)(b), states that a full scale IQ score of 71-75 accompanied by a verbal or performance IQ score of 70 or below can replace a full scale IQ score of 70 or below when determining eligibility for the listing, so long as those scores are combined with marked

11

or as high as 76, given the five point margin of error that is incident to standardized IQ tests. Howe's IQ score of 71 is a severe impairment, but it is above the limit of 70 in Listing 12.05(C) and 12.05(D)[3]. An IQ score of 71 does not support a finding that a claimant is presumptively disabled because it is "not low enough to meet the requirements set forth in the Listing of Impairments." *Cockerham v. Sullivan*, 895 F.2d 492 (8th Cir. 1990); *see also Howard v. Massanari*, 255 F.3d 577 (8th Cir. 2001) (an IQ score slightly above the 12.05(C) limit constitutes substantial evidence supporting a finding that claimant is not mentally retarded). The Eighth Circuit has not specifically ruled on whether the margin of error in standardized IQ tests should be taken into consideration for in assessing a listing. District courts have declined to use margin of error to extend the upper limit of the range from 70 to 75. *See Bendt v. Chater*, 940 F.Supp 1427, 1431 (S.D. Iowa 1996).

In addition to an IQ score in the range of 60–70, 12.05(C) requires "a physical or other mental impairment imposing an additional and significant work-related limitation of function." The ALJ found that Howe did not have such an impairment, based on Howe's past work history and medical treatment in the record. The ALJ found that Howe did not experience any of the additional requirements of 12.05(D). Howe experiences only mild restrictions in activities of daily living, and only moderate difficulties in maintaining social functioning, concentration,

---

limitations in areas of mental functioning. In 2014, Howe took the WAIS-IV IQ test, which does not specify a performance IQ score, though his verbal comprehension score was 76.

[3] 20 C.F.R. § 404 Subpart P, Appendix 1, § 12.05 (2015) provides:

> Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e. . . . before age 22. . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
> OR
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

12

persistence, or pace. Howe has experienced an episode of decompensation, but it was not of an extended duration, and did not recur on a repeating basis.

Howe's IQ score is higher than the limit of 70, and the test's margin of error does not change the published criteria. The record supports the ALJ's finding that Howe does not have additional work-related limitations of function, marked restrictions or difficulties, or repeated episodes of decompensation. The Court finds that substantial evidence supports the ALJ's determination that Howe does not qualify as presumptively disabled under Listing 12.05(C) or 12.05(D).

### D. The ALJ's Determination of Howe's RFC And Hypothetical To The VE Included All The Relevant Facts

In his hypothetical to the VE, the ALJ outlined Howe's record-supported impairments and limitations:

> [A]ssume a hypothetical individual the claimant's age and education with the past jobs that [were] described in the past work summary... Further assume that the individual has no exertional limitations. But the individual can only occasionally interact with supervisor and co-workers. And [h]ave only incidental interaction with the public. The individual can perform simple work related decisions. The individual can perform simple instructions and tasks [but] should not [be] required to carry out detailed and complex instructions or tasks.

Tr. 64.

Based on the hypothetical, the VE stated that an individual with the hypothetical impairments would be able to return to Howe's past relevant work, described in the Dictionary of Occupational Titles ("DOT") as an Assembler (production), DOT 706.687-010, and Machine Operator II, DOT 619.685-062. The VE confirmed that this statement was consistent with the DOT. The ALJ relied upon this opinion in reaching his conclusion. Howe asserts that this hypothetical was inaccurate and incomplete.

Further testimony from the VE was elicited in response to additional hypothetical questions from the ALJ (Tr. 65) and Howe's attorney (Tr. 65–66) that incorporated descriptions of limitations brought on by disruptive psychological symptoms, a need for extra supervision, difficulties in concentration and pace, and attendance issues. In response to the ALJ's second hypothetical, the VE stated that an individual would be precluded from competitive employment if he had the additional limitation of only being able to work at a slow pace for one third of the workday. In response to questions from Howe's attorney that built on the ALJ's first

hypothetical, the VE stated that an individual would be precluded from competitive employment if he had any of the additional limitations of having to miss three days of work per month or being off-task 20 percent of the time due to "psychologically based symptoms," or requiring one-on-one assistance or supervision every hour.

Howe's allegation that the hypothetical upon which the ALJ based his decision should have included RFC limitations regarding concentration, pace, extra supervision, and repeated instruction is unsupported by record evidence. The ALJ found no evidence that these psychologically-based symptoms would be disruptive to his attendance and or ability to remain on-task at work. Treating physician Dr. Bisnauth's 2014 reports, which included statements Howe and his mother made regarding the effects proper medication had on his mood, aggression, and outbursts of anger, contradict the testimony given by Howe and his mother at the hearing that he had greater limitations than those as described by the ALJ in his first hypothetical to the VE (Tr. 422, 425, 427–28, 430–32).

Dr. Weis concluded that Howe would be moderately limited in his ability to interact appropriately with the general public, accept instructions and criticism from supervisors, or get along with coworkers, but that he would be able to interact with others on a limited basis (Tr. 79, 80). The ALJ's first hypothetical properly stated Howe's limitations on his ability to interact only incidentally with the public, and only occasionally with supervisors and coworkers. Dr. Martin's assessment of Howe indicated that Howe's ability to concentrate in a formal setting was fair (Tr. 374). This is consistent with Dr. Weis's assessment that Howe would have only moderate limitations in his ability to maintain pace, attention and concentration for extended periods, but that these abilities were within a normal range (Tr. 78, 80). These assessments constitute substantial evidence supporting a finding that Howe did not have a limitation on pace or concentration that impacted his ability to return to his former work. The ALJ's conclusions based on the first hypothetical posed to the VE are supported by Dr. Weis's opinion that Howe's ability to understand, remember, and carry out detailed instructions was moderately limited and he should be able to complete very basic tasks (Tr. 64, 78, 80). The record does not support the additional limitations presented to the VE in the hypotheticals posed by Howe's attorney when cross-examining the VE.

Because the ALJ's first hypothetical question properly included the concrete consequences of all of Howe's functional limitations that were supported in the record, the Court

finds that the VE's response regarding Howe's capability of returning to past relevant work provides substantial evidence to support the ALJ's Step Four finding that Howe was not disabled (Tr. 17, 22–23, 64–66). *See Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010); *see also Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006).

## V. CONCLUSION

The ALJ did not err in denying Howe disability insurance benefits. The ALJ's findings were supported by substantial evidence in the record. Viewing the record as a whole, and considering evidence that both supports and detracts from the ALJ's decision, the Court finds that there is substantial evidence to support the ALJ's findings and conclusions. The ALJ's decision should be affirmed. Howe's request that the case be remanded for further findings should be denied.

## VI. REPORT AND RECOMMENDATION AND ORDER

IT IS RESPECTFULLY RECOMMENDED that the Commissioner's decision to deny Howe disability insurance benefits be affirmed.

IT IS ORDERED that the parties have until August 9, 2017, to file written objections to the Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(C). Any objections filed must identify the specific portions of the Report and Recommendation and relevant portions of the record to which the objections are made and must set forth the basis for such objections. *See* Fed. R. Civ. P. 72; *see also St. Jude Med. S.C., Inc. v. Tormey*, 779 F.3d 894, 902 (8th Cir. 2015) (citing *McDonald v. City of St. Paul*, 679 F.3d 698, 709 (8th Cir. 2012)). Failure to timely file objections may constitute a waiver of Plaintiff's right to appeal questions of fact. *United States v. Kelley*, 774 F.3d 434, 439 (8th Cir. 2014) (citing *Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

Dated this 26th day of July, 2017.

CELESTE F. BREMER
UNITED STATES MAGISTRATE JUDGE